IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JOANN ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:10-CV-005 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1966. She applied for benefits in March and April 2007, claiming to be disabled by "heart condition, back condition, [and] thyroid condition." [Tr. 127, 135, 150]. Plaintiff alleges a disability onset date of March 15, 2006. [Tr. 127, 135]. Her applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in January 2009.

In April 2009, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "coronary artery disease, status post stent placement; angina; [and] low back pain, status post 2 back surgeries," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 11-13]. The ALJ found plaintiff to have the residual functional capacity ("RFC") for sedentary exertion with "no repetitive bending, stooping, or squatting, a sit/stand option, and simple, low stress jobs." [Tr. 13]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the regional and national economies. [Tr. 17]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council. [Tr. 1-3]. The ALJ's ruling thus became the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 416.1481, and this timely appeal followed. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff's most recent employment was as a factory materials handler. [Tr. 151]. She underwent back surgery in 2000 or 2001 and again in 2002. [Tr. 26, 223]. Plaintiff was terminated in November 2006 because the employer did not have light duty work available for her. [Tr. 25].

Plaintiff testified that she continues to suffer back pain, and that she is limited in sitting and standing. [Tr. 28]. Plaintiff also claims to suffer pain and restricted motion in

2

her neck. [Tr. 29, 35]. She had a heart attack in 2006, and she purports to have problems with anxiety and "stress induced asthma." [Tr. 30, 32]. Despite these conditions, plaintiff continues to smoke up to one pack of cigarettes per day. [Tr. 332, 346, 348]. She remains able to cook, drive, shop, walk for thirty minutes at a time, and raise two children as a single parent. [Tr. 40, 157].

## III.

*Relevant Medical Evidence*

Plaintiff saw orthopaedist Dr. Richard Duncan in January 2001 complaining of a recent onset of low back and left leg pain. [Tr. 223]. Two surgeries followed. [Tr. 221].

Plaintiff visited Dr. Duncan again in April 2006 complaining of increasing left leg pain due to driving a "tow motor" at work. [Tr. 221]. An MRI of the lower back indicated mild bulging and degenerative endplate changes, along with "[m]oderate epidural fibrosis surround[ing] the left S1 nerve root and the left half of the thecal sac." [Tr. 222]. By July 2006, plaintiff reported that her leg pain had largely resolved, but she continued to complain of back pain. [Tr. 218]. Dr. Duncan noted, "She will continue working light duty until she has a Functional Capacity Evaluation ["FCE"] to see what she can and cannot do." [Tr. 218].

Plaintiff underwent an FCE on July 25, 2006. [Tr. 217].[1] In August 2006, Dr. Duncan wrote,

---

[1] That evaluation report is not a part of the administrative record.

> She gave a poor to fair effort with some inconsistency noted. She scored positive for inappropriate illness behavior and fear avoidance as well as symptom magnification . . . and positive for inappropriate illness behavior in 8 out of 14 categories. Based on this, this invalidates the [FCE]. . . . With her body habitus and disk degeneration, she should avoid heavy lifting, pushing greater than 30-35 pounds. Otherwise, I would not place any long-term restrictions on her.

[Tr. 217]. Dr. Duncan subsequently added that the FCE was "absolutely invalidated" due to inappropriate illness behavior and symptom magnification. [Tr. 216].

Plaintiff sought treatment from general practitioner Dr. Polly Billips in October 2006 for neck pain and stiffness which she related to repetitive twisting and turning during on-the-job tow motor operation. [Tr. 308]. Plaintiff requested, and received, a referral to Dr. Duncan. [Tr. 307-08]. A prior MRI, performed in June 2006, indicated among other things "significant degenerative disc change at C4-C5." [Tr. 278-79].

Plaintiff suffered a heart attack in late 2006, and a stent was inserted. [Tr. 270]. In September 2007, plaintiff was noted to have no cardiac complaints, even though she continued to smoke one pack of cigarettes per day. [Tr. 345-46]. That same month, and again in November 2007, treating cardiologist Dr. Christopher Kennedy commented that plaintiff was "doing well." [Tr. 355, 357].

In December 2006, plaintiff contacted Dr. Billips' office requesting "a letter stating that she has a back problem and a heart problem. It needs to say that she can't work or is disabled." [Tr. 301]. Dr. Billips declined, stating that those opinion letters should come from the orthopaedist and the cardiologist. [Tr. 301].

4

Dr. William Kennedy performed an Independent Medical Examination in February 2007 at the request of plaintiff's worker's compensation attorney. Dr. Kennedy "did not find clinically significant signs of symptom magnification. Furthermore, Ms. Allen's very concrete patterns of thinking did not suggest any intentional attempt to mislead me." [Tr. 329]. Based on plaintiff's lower back injury [Tr. 328], Dr. Kennedy recommended,

> Future activities of daily living and employment should not require any bending, stooping or squatting; working over rough terrain or in rough vehicles; any ladder climbing or excessive stair climbing; or working with her hands raised above the level of her shoulders. She should not attempt to work at heights or under conditions such as on her hands and knees or crawling in which her safety and stability would depend on the normal strength and mobility of her low back. She should be able to control her posture with respect to sitting or standing. She should not be subjected to vibrations. Lifting and carrying or pushing and pulling should not exceed 10 pounds occasionally or 5 pounds frequently assuming a level lift and a level push or pull.

[Tr. 330]. Dr. Kennedy's lengthy report makes no mention of plaintiff's alleged neck pain. [Tr. 324-30].[2]

In July 2007, plaintiff saw Dr. Muna Chaudhry in part "to get recommendation to go on disability" because "Dr. Billips would not give [such a letter] to her." [Tr. 348].[3] Dr. Chaudhry wrote, "Considering patient's clinical state, I think she can do work that is not

---

[2] At the administrative hearing, plaintiff testified that she asked Dr. Kennedy about her neck but he would not consider that issue "[b]ecause it's workers comp." [Tr. 34-35].

[3] The ALJ's written decision erroneously refers to Dr. Chaudhry as "Dr. Clarity" and "Dr. Quillen." [Tr. 15].

5

physically demanding." [Tr. 349].

At the Commissioner's request, Dr. Krish Purswani performed a consultative examination in September 2007. Dr. Purswani noted that plaintiff presented "with 3 allegations." [Tr. 331]. None of those allegations pertained to neck pain [Tr. 331-34], and Dr. Purswani's examination of the neck was normal. [Tr. 333]. Dr. Purswani concluded in material part:

> 1. The patient can occasionally lift 10 pounds from the table assuming a level lift and a level push or pull, because of chronic low back pain / 2 back surgeries / CAD / Angina.
>
> 2. She can stand and walk with breaks for a total of 4 hours in an 8-hour day because of chronic low back pain / 2 back surgeries / CAD / Angina.
>
> 3. She can sit for a total of 7 hours in an 8-hour day.

[Tr. 334].

At an October 2007 appointment with Dr. Chaudhry, plaintiff was noted to have no complaints other than occasional right knee pain secondary to stair climbing. [Tr. 372]. At a July 2008 appointment with Dr. Chaudhry, there were no complaints other than occasional dizziness for which medication was prescribed. [Tr. 368]. At a September 2008 appointment, there were "no complaints." [Tr. 367]. The following month, plaintiff complained only of "significant anxiety secondary to acquiring disability." [Tr. 381].

6

IV.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[4] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

---

[4] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

V.

*Analysis*

Plaintiff presents two arguments on appeal. First, she argues that the ALJ erred in not fully adopting all of the lower back restrictions predicted by consulting examiner Dr. William Kennedy. Plaintiff also contends that the ALJ should have credited her complaints regarding neck pain. The court will address these issues in turn.

A. Dr. William Kennedy

As noted above, the ALJ restricted plaintiff to the performance of no more than sedentary work with "no repetitive bending, stooping, or squatting, a sit/stand option, and simple, low stress jobs." [Tr. 13]. Plaintiff objects that this RFC finding does not incorporate every limitation predicted by Dr. William Kennedy.[5]

The administrative record consists of opinion evidence by two consultative examiners (Drs. Kennedy and Purswani) and two treating physicians (Drs. Duncan and Chaudhry), all of whom opined that plaintiff can still work. The consultative examiner opinions were given "some weight" by the ALJ [Tr. 12, 15] in light of the context in which they were generated (each was requested and paid for by one party or the other). The ALJ also gave weight to the opinion of treating orthopaedist Duncan, who found his patient to be far more capable than either of the consulting examiners (partially in light of perceived

---

[5] Because plaintiff offers absolutely no developed argumentation [doc. 11, p. 9] as to *which* of Dr. Kennedy's additional limitations should have been credited, the court presumes that plaintiff is arguing for the incorporation of *all* of them.

9

malingering), and the opinion of treating physician Chaudhry. *See* 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Ultimately, after a discussion of the medical record, the ALJ generated an RFC finding that was a reasonable synthesis of the various medical opinions. The substantial evidence standard of review permits that "zone of choice," *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted), and plaintiff has offered no developed argumentation as to why Dr. Kennedy's views should have been credited in full over the conflicting views of the other physicians of record. *See United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation], are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Further, although plaintiff disagrees, the ALJ credited her subjective complaints to a large degree. He expressly gave her "the benefit of the doubt" in restricting her to a range of sedentary exertion, even though the treating orthopaedist considered her

10

more capable. [Tr. 15]. The ALJ restricted plaintiff to low stress jobs, despite minimal complaints or treatment regarding anxiety. It is further noted that nonexamining Drs. Joe Allison and Saul Juliao completed Physical RFC Assessment forms following review of plaintiff's medical records. [Tr. 336-42, 358-65]. Dr. Allison and Dr. Juliao both opined that plaintiff can perform a range of *light* exertion. The ALJ rejected those sources "because they are non examining, non treating physicians." [Tr. 16].

In sum, the ALJ weighed the various medical opinions, reached a conclusion, and explained that conclusion. That is precisely the ALJ's job. *See Mullen*, 800 F.2d at 545. The court finds no error.

### B. Neck Pain

Plaintiff next contends that the ALJ did not consider her alleged neck impairment. She is incorrect.

The framework for analyzing subjective complaints of pain is set forth at 20 C.F.R. §§ 404.1529 and 416.929, and is summarized as follows:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In the present case, there is objective medical evidence of problems with plaintiff's neck - specifically, the June 2006 MRI indicating among other things "significant

degenerative disc change at C4-C5." [Tr. 278-79]. At issue is *the extent* to which that condition limits the ability to work. On that point, considerations of particular relevance to the instant case include the treatment received, the claimant's statements about her symptoms, and the duration and frequency of those symptoms. *See* 20 C.F.R. § 404.1529(c)(3)-(4).

Although plaintiff accuses the ALJ of "not even mention[ing] Plaintiff's allegations regarding her neck" [doc. 11, p.10], the ALJ in fact noted those complaints more than once. [Tr. 14-15]. He also observed that plaintiff generally did not mention that condition to her physicians. [Tr. 12-13, 15]. In keeping with § 404.1529, the ALJ explained, "As for her allegations of neck pain with inability to turn her head, the record does not show any significant/consistent complaints." [Tr. 15].[6] Therefore, the ALJ considered the § 404.1529 factors and, based on a dearth of complaints and treatment, decided not to credit plaintiff's alleged neck limitations. That decision was supported by substantial evidence.

VI.

*Conclusion*

For the reasons discussed herein, the decision below survives substantial evidence review and will not be reversed by this court. Plaintiff's objections regarding her back and neck conditions are not persuasive. The Commissioner's final decision will be

---

[6] The court again notes that: (1) plaintiff did not mention her neck condition *at all* during Dr. Purswani's consultative examination; (2) Dr. Purswani's examination of the neck was normal; and (3) plaintiff raised no complaints regarding her neck at her 2007 and 2008 appointments with treating physician Chaudhry.

affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge